NOT DESIGNATED FOR PUBLICATION

No. 127,819

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHANE MICHAEL DEGRAEVE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD KUCKELMAN, judge. Submitted without oral argument. Opinion filed August 7, 2026. Affirmed in part, reversed in part, and vacated in part.

*Andrew J. McGowan*, of Kansas Appellate Defender Office, for appellant.

*Andrew J. Lohmann*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ATCHESON and CLINE, JJ.

PER CURIAM: A jury in Leavenworth County District Court convicted Shane M. DeGraeve of reckless second-degree murder, three counts of aggravated child endangerment, and driving under the influence, arising out of a mishap in which he drove his pickup off the road, resulting in fatal injuries to his nine-year-old son. On appeal, DeGraeve contends: (1) Insufficient evidence supported the murder and DUI convictions; (2) the jury should have been instructed on misdemeanor child endangerment as a lesser included crime; and (3) he should have been sentenced for involuntary manslaughter as a more specific offense than reckless second-degree murder. We find insufficient evidence

1

supported the DUI conviction on the theory submitted to the jury, so we reverse it, enter a judgment of acquittal, and vacate that sentence. We find no reversible error as to the other convictions; we affirm them and the concomitant sentences.

FACTUAL AND PROCEDURAL HISTORY

About 8 p.m. on the first Saturday in September 2022, DeGraeve drove his pickup off Highway 192 when he failed to negotiate a marked S curve. With him were his sons (pseudonymously identified in the appellate briefs as) Cody, age 12; George, age 9; and Steven, age 2. George was in the front passenger seat, and Cody and Steven were in the back seats. As the pickup rolled over, George was ejected and suffered fatal injuries.

In an amended complaint, the State charged DeGraeve this way:

• Reckless second-degree murder and in the alternative involuntary manslaughter for a death occurring while driving under the influence in violation of K.S.A. 8-1567(a)(3) (incapable of driving safely) or K.S.A. 8-1567(a)(1) (operating a motor vehicle with a blood alcohol level of 0.08 or more as shown by any competent evidence);

• Three counts of aggravated child endangerment, a felony violation of K.S.A. 21-5601(b)(1), corresponding to each of the children; and

• DUI under K.S.A. 8-1567(a)(3), and in the alternative under (a)(1), as a misdemeanor first offense.

The jury heard evidence during the four-day trial in early April 2024. Much of the testimony from the State's witnesses and DeGraeve, who testified in his own defense, involved his fairly quotidian activities during the day leading up to the fatal mishap, including differing estimates of how much beer he had consumed. The trial produced

2

additional conflicts between DeGraeve's version of the events and other accounts and evidence.

• DeGraeve testified that he specifically told Cody and George to buckle up. He claimed he always required them to wear seatbelts. But law enforcement officers reported that the front seat belts in the pickup had "silencers" on them, keeping them from being engaged.

• DeGraeve estimated his speed before the mishap at about 40 miles an hour—the posted limit for the curve. A recording device recovered from the pickup showed the vehicle was traveling at about 70 miles an hour just before the airbags deployed. James Harkin, a retired firefighter, had a clear view of the mishap from his front porch about 150 yards from the highway. He testified the pickup was going considerably faster than the speed limit.

Harkin called in the mishap. He then went to the scene and began CPR on George who was neither breathing nor otherwise responsive. Harkin and law enforcement officers continued administering aid to George until EMS personnel arrived.

• DeGraeve testified an approaching car appeared to be headed into his lane, so he had to swerve suddenly to avoid it. Cody testified there was no other vehicle in the vicinity. Harkin so testified as well. The pickup's tire tracks, as law enforcement officers observed and photographed them, did not show any swerving or other evasive action; they went straight off the road.

• DeGraeve testified he was streaming music on his cellphone, so it couldn't otherwise be used. Cody said his father was holding the cellphone in his hand when the pickup went off the road.

• After the mishap, DeGraeve exhibited signs of intoxication: He smelled of alcohol; his speech was slurred; and he had bloodshot, watery eyes. At trial, DeGraeve testified he is allergic to hay and had been moving hay bales that afternoon. DeGraeve initially told officers he had not been drinking but later admitted he had drunk some beer. He declined to consent to a blood draw to test his alcohol level. Officers obtained a search warrant for the blood draw.

Pertinent to the issues on appeal, after Harkin called in the incident, the first responding officer received a dispatch to go to the scene at 8:15 p.m., so DeGraeve was no longer driving then. The blood draw was taken at 11:18 p.m. at an area hospital. At trial, a KBI forensic scientist in the agency's toxicology section testified that an analysis of the blood sample showed a blood alcohol level of 0.083 with a variance of .006, meaning DeGraeve's actual alcohol level could have been anywhere between 0.077 and 0.089 at the time of the blood draw.

The district court instructed the jury on reckless second-degree murder with lesser included offenses of involuntary manslaughter DUI, reckless involuntary manslaughter, and vehicular homicide; three counts of aggravated endangerment of a child with no lesser included offenses; and DUI for being unable to drive safely or alternatively for operating a motor vehicle with a blood alcohol level of .08 or more as measured within three hours of operating the vehicle. Again, pertinent to the appellate issues, the alternative DUI offense described in the instructions fit under K.S.A. 8-1567(a)(2) rather than under (a)(1), as charged in the amended complaint. Nobody objected to the variance during the trial.

The jury convicted DeGraeve of reckless second-degree murder, all three counts of aggravated endangerment of a child, and the alternative DUI charge based on his blood alcohol level. At a later hearing, the district court ordered DeGraeve to serve a standard guidelines sentence of 117 months on the second-degree murder conviction and 6 months

4

on each aggravated endangerment conviction, to be served consecutively and consecutively to the murder conviction, with a concurrent 6-month jail term on the DUI, for a controlling term of 135 months in prison followed by postrelease supervision for 36 months. Under K.S.A. 21-5601(c)(3), the sentences on the convictions for aggravated endangerment of a child had to be served consecutively to any other sentence. DeGraeve has timely appealed.

LEGAL ANALYSIS

As we have indicated, DeGraeve has raised several issues on appeal. We take them up in the order he has presented them, adding to our general statement of the case history as necessary.

*Sufficiency of the DUI Conviction*

DeGraeve contends the State failed to admit evidence at trial to prove the DUI charge as presented to the jury in the district court's instructions. His point appears to be well taken. The district court instructed the jury on DUI as defined in K.S.A. 8-1567(a)(2), criminalizing driving with a blood alcohol level of .08 or more as measured within three hours of operating a motor vehicle. As we have indicated, that deviated from the charge in the complaint under K.S.A. 8-1567(a)(1) that criminalizes driving with a blood alcohol level of .08 established through "any competent evidence."

In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021); *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018). But that forgiving

5

standard does not aid the State here because the undisputed trial evidence demonstrates the insufficiency of the State's proof.

As we have outlined, the trial evidence plainly showed that DeGraeve's blood was drawn more than three hours after he last drove his pickup. (The dispatcher relayed the accident call to area law enforcement officers at 8:15 p.m., and the hospital records show the blood draw occurred at 11:18 p.m.) Accordingly, there was no evidence that any test measured DeGraeve's blood alcohol level at more than .08 within the three-hour window. Under subsection (a)(2), a defendant's blood must be drawn within that window, although the actual analysis to determine a blood alcohol level may be done later. *State v. Pendleton*, 18 Kan. App. 2d 179, 187, 849 P.2d 143 (1993) (construing comparable language in predecessor version of K.S.A. 8-1567[a][2] with two-hour window); *State v. Williams*, No. 114,371, 2016 WL 7428309, at *5 (Kan. App. 2016) (unpublished opinion) (applying *Pendleton* to three-hour window in K.S.A. 8-1567[a][2]); see *State v. Lewis*, No. 126,268, 2024 WL 2237640, at *3-4 (Kan. App. 2024) (unpublished opinion) (relying in part on *Pendleton*, court rejects defendant's argument blood draw must be taken *and* analyzed within three-hour window).

But a blood draw taken beyond the window may be admitted in a prosecution for a violation of subsection K.S.A. 8-1567(a)(1) as a form of other competent evidence. *Pendleton*, 18 Kan. App. 2d at 185; see K.S.A. 8-1013(f) ("'Other competent evidence'" for purposes of K.S.A. 8-1567[a][1] includes blood alcohol levels from "samples" taken more than three hours after the defendant last drove.). So the State may rely on a broader array of evidence to prove a violation of subsection (a)(1) than (a)(2).

Given the nature of the variance between the form of the crime charged in the complaint and the form in the jury instruction, we apply the rule laid down in *State v. Couch*, 317 Kan. 566, 584, 533 P.3d 630 (2023), *abrogated on other grounds by State v. Garcia-Martinez*, 318 Kan. 681, 546 P.3d 750 (2024), and weigh the trial evidence

against the elements of the crime outlined in the instructions. As we have explained, the State failed to prove a violation of K.S.A. 8-1567(a)(2).

The State contends we should follow *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018), where the court looked at the crime as charged in the complaint rather than as submitted in the jury instructions and reversed the defendant's aggravated criminal sodomy conviction for insufficient evidence. We discount the State's position for two reasons. First, given how the Kansas Supreme Court has read the statute criminalizing aggravated criminal sodomy, the complaint in *Fitzgerald* failed to charge the crime against the defendant as a matter of law. And there was no amendment of the complaint to charge the factual variant of the crime submitted to the jury in the instructions—that the defendant committed the act of sodomy rather than inducing or coercing the victim to commit the act with another person. 308 Kan. at 666-67.

Here, however, the complaint charged a DUI theory against DeGraeve that would have legally supported a conviction upon proper proof. But the district court instructed the jury on what amounted to a narrower variant that required more specific and particularized proof that the State could not and did not offer at trial. In that circumstance, the sufficiency of the trial evidence must be measured against the jury instruction rather than the complaint to satisfy constitutional due process protections afforded criminal defendants. *Couch*, 317 Kan. 566, Syl. ¶ 5, 584.

The State's argument fails for a second, independent reason. Under the DUI charge in the complaint, the jury could have considered "any competent evidence" to determine whether DeGraeve's blood alcohol level was .08 or more rather than only a blood draw taken within three hours of his having driven the pickup. As we have described, the trial record presented a mix of evidence on DeGraeve's intoxication. As a reviewing appellate court, we are in no position to surmise what the jury would have concluded from that evidentiary picture. We would be doing no more than substituting our assessment for the

7

jury's without having had the opportunity to see the witnesses testify. See *State v. Franco*, 49 Kan. App. 2d 924, 936-37, 319 P.3d 551 (2014) (appellate courts lack "vantage point" to assess credibility because they cannot observe witnesses as they testify—an "integral" part of that assessment). As the *Couch* court explained, we cannot properly make that sort of judgment, dependent upon credibility determinations. 317 Kan. at 584 (appellate court "cannot uphold [a] conviction . . . based on a theory of criminal liability that was not included in the instructions to the jury").

The Kansas Supreme Court's recent decision in *State v. Boese*, 322 Kan. ___, 589 P.3d 591 (2026), does not require a different result. There the district court issued a protection from stalking order against John Boese. The State later charged him with violating a protection from abuse order, even though no such order had been entered. In a bench trial, the district court found Boese guilty of violating the protection from stalking order. The court reversed the conviction because Boese had been found guilty of a crime he had not been charged with. 589 P.3d at 595. That is different from the error in this case. Here, the district court submitted a factually narrower variant of the charged crime to the jury, and the State's evidence failed to prove that variant as a matter of law. Under those circumstances, the State could not revert to the broader charge in the complaint to uphold the jury's factually unsupported guilty verdict precisely because the jury was never asked to render a decision on that charge. Neither the district court nor a reviewing appellate court could properly draw on their assessment of the evidence as a substitute for a verdict the jury never rendered. To do so would be something akin to a district court rendering a judgment of guilty on its own review of the evidence in the face of a hung jury rather than declaring a mistrial.

We reverse DeGraeve's conviction for violating K.S.A. 8-1567 and vacate his sentence for that crime and enter a judgment of not guilty. See *State v. Baumgarner*, 59 Kan. App. 2d 330, 331, 401 P.3d 170 (2021) (remedy upon finding insufficient evidence to support conviction).

8

*Lesser Included Offense for Aggravated Child Endangerment*

For the first time on appeal, DeGraeve argues the district court should have instructed the jury on misdemeanor child endangerment as a lesser included offense of felony aggravated child endangerment. Under K.S.A. 22-3414, a district court is obligated to instruct on a lesser included offense if "some evidence" admitted at trial "would reasonably justify" a guilty verdict on that offense. Appellate courts deploy a sequential inquiry to assess a claimed instructional error and consider: (1) reviewability entailing preservation of the issue at trial and jurisdiction; (2) the legal appropriateness of the instruction; (3) the factual support in the evidence for the instruction; and (4) the harmlessness of any actual error. *State v. Craig*, 311 Kan. 456, 464, 462 P.3d 173 (2020); *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

On the first consideration, DeGraeve did not request an instruction on misdemeanor child endangerment from the district court. Although his failure does not preclude appellate review, we impose a stringent "clear error" standard as a result. K.S.A. 22-3414(3).

Misdemeanor child endangerment is a legally appropriate lesser included offense of felony aggravated child endangerment. Under K.S.A. 21-5601, the misdemeanor requires the defendant to knowingly place a child in circumstances where their "life, body[,] or healthy *may be* endangered"; the felony requires the child recklessly be placed in circumstances where their "life, body[,] or health *is* endangered." (Emphasis added.) K.S.A. 21-5601(a), (b)(1). So the misdemeanor criminalizes the potential for endangerment, and the felony criminalizes actual endangerment. And as a misdemeanor, child endangerment is a lesser degree of the aggravated felony offense. See *State v. Butler*, 321 Kan. 493, 509-10, 581 P.3d 1261 (2026).

9

In considering factual appropriateness, we look at the evidence in a light favoring the defendant and resolve credibility disputes to their advantage. We then ask whether a reasonable jury could have returned a guilty verdict on the lesser included crime. If so, the district court should have instructed the jury on that crime. *Franco*, 49 Kan. App. 2d at 929; see *Plummer*, 295 Kan. at 161-62. For purposes of this appeal, we assume that DeGraeve's highly disputed account of the mishap would support a conviction for misdemeanor child endangerment. In turn, the district court would have erred in failing to so instruct the jury. But that victory for DeGraeve is a distinctly limited one.

In reviewing for clear error, we must be "firmly convinced" the jury would have reached a different verdict based on the full trial record had the lesser included instruction been given. *Couch*, 317 Kan. at 590. We readily conclude DeGraeve has failed to get past that formidable hurdle. Virtually every assertion in DeGraeve's trial testimony depicting himself as essentially blameless for the pickup rollover was refuted by multiple witnesses or other evidence. The trial record taken as a whole shows: (1) DeGraeve driving way over the posted speed limit for the curve; (2) there was no oncoming vehicle threatening the pickup; and (3) he grossly misjudged the turn and drove straight off the highway, while using his cell phone and likely being intoxicated. In addition, the evidence strongly indicates he did not require his sons to wear seatbelts, contrary to his testimony. Given the point-by-point refutation of DeGraeve's testimony, the jury reasonably could have concluded he was a prevaricator—not merely an honest though mistaken witness— unworthy of belief in describing any material aspect of the mishap and his son's death. See *Franco*, 49 Kan. App. 2d at 936) (jurors "reasonably could conclude that had [defendant] been deliberately false in one claim, he may have been false in others"); *Beauclair v. State*, No. 123,671, 2022 WL 17546264, at *4 (Kan. App. 2022) (unpublished opinion) (noting maxim that "a witness false in one thing may be false in all things"); see also 89 C.J.S. Trial § 742 (2024) (stating maxim: "if the jury believes that a witness's testimony on a material issue is intentionally deceitful, the jury may disregard all of that witness's testimony").

10

The full trial record portrays circumstances showing that the three children, as passengers in their father's speeding pickup, were endangered as he badly navigated a sharp curve in the highway. This was not a situation in which they might have become endangered had things gotten worse. George's death poignantly illustrates as much.

We find any error in failing to instruct the jury on misdemeanor child endangerment to be harmless.

*Sentencing on Involuntary Manslaughter as More Specific Offense*

DeGraeve contends that involuntary manslaughter committed while driving under the influence is a more specific crime than reckless second-degree murder, so he should be sentenced accordingly under K.S.A. 21-5109(d). The statute curtails circumstances that would result in duplicative punishment of a defendant for a single criminal act. To that end, K.S.A. 21-5109(d) provides:

> "(d) Unless otherwise provided by law, when crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct, the defendant:
> (1) May not be convicted of the two crimes based upon the same conduct; and
> (2) shall be sentenced according to the terms of the more specific crime."

On its face, K.S.A. 21-5109(d) appears to require that a defendant be convicted of two crimes—the one proscribing general conduct and the one proscribing a more specific form of that conduct—to obtain the statutory sentencing accommodation. This court has so recognized. *State v. Stohs*, 63 Kan. App. 2d 500, 505, 531 P.3d 533 (2023). And that reading of the statutory language would undercut DeGraeve's argument since he was not convicted of involuntary manslaughter. Without citing *Stohs*, the Kansas Supreme Court recently construed K.S.A. 21-5109(d) to be applicable only when a defendant has been

11

convicted of two crimes arising out of the same conduct. *State v. Ross*, 322 Kan. ___, 2026 WL 2065823, at *7 (2026).

That is enough to reject DeGraeve's argument. But the argument also fails for a more basic reason the *Ross* court recognized—K.S.A. 21-5109(d) applies only when one crime prohibits the same conduct as the second crime and simply adds "a specifying element." 2026 WL 2065823, at *8. Reckless second-degree murder and involuntary manslaughter DUI do not fit that template. DeGraeve reductively posits that reckless second-degree murder can be committed in many different ways and need not involve a motor vehicle or intoxication at all, so a homicide resulting from the commission of driving while intoxicated constituting a form of involuntary manslaughter must be a specific instance of the same conduct. DeGraeve's reasoning fails because the two crimes materially differ in the requisite blameworthy conduct necessary to convict, so they are not general and specific instances of the same crime for purposes of K.S.A. 21-5109(d). Reckless second-degree murder requires the State to prove the defendant acted "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 21-5403(a)(2). The State may prove involuntary manslaughter by showing that the death of a human being occurred as a result of the defendant's "commission of" a violation of K.S.A. 8-1567, prohibiting driving under the influence. K.S.A. 21-5405(a)(5). Extreme indifference to human life is not required. Hence, the crime is punished less severely and may be considered less blameworthy.

Indeed, the Legislature appears to have crafted involuntary manslaughter arising from the commission of a DUI as a crime requiring no culpable mental state, essentially a strict liability crime. The Legislature included no culpable mental state in K.S.A. 21-5405(a)(5); the crime simply requires "the killing of a human being committed . . . in the commission of . . . an act described in K.S.A. 8-1567." And the Legislature has designed violations of K.S.A. 8-1567 as crimes that require no culpable mental state. K.S.A. 21-5203(c). We have recognized that the interplay of those statutes likely makes involuntary

12

manslaughter a strict liability crime. *State v. Kelly*, No. 114,563, 2017 WL 1295354, at *12 (Kan. App. 2017) (unpublished opinion). Conversely, reckless second-degree murder requires a culpable mental state. That difference alone establishes that involuntary manslaughter DUI is not simply a specific instance of the conduct criminalized as reckless second-degree murder.

Kansas appellate courts have recognized that conduct amounting to driving under the influence does not automatically evince recklessness or the sort of "extreme indifference" necessary to prove reckless second-degree murder. See *State v. Robinson*, 267 Kan. 734, 738-39, 987 P.2d 1052 (1999); *State v. Barajas*, 43 Kan. App. 2d 639, 646-47, 230 P.3d 784 (2010); *State v. Alexander*, No. 124,875, 2023 WL 9016149, at *3 (Kan. App. 2023) (unpublished opinion) (acknowledging rule in affirming reckless second-degree murder conviction for fatality resulting from motor vehicle collision). For example, a defendant may be guilty of DUI if their blood alcohol level is .08, even if their driving does not appear to be substantially impaired. Conversely, someone driving while "blind drunk" might well display extreme indifference to human life, especially if they had been involved in a property damage collision shortly before a fatal collision with another motor vehicle. See *State v. Doub*, 32 Kan. App. 2d 1087, 1091-92, 95 P.3d 116 (2004) (recognizing list of factors evincing extreme recklessness or indifference to human life when coupled with driving under the influence). In short, driving under the influence is not per se proof of the sort of extreme indifference to human life necessary to establish reckless second-degree murder. So involuntary manslaughter DUI is not an inherently specific instance of reckless second-degree murder for that reason.

Moreover, here DeGraeve may have been driving under the influence, but he engaged in additional conduct demonstrating extreme indifference to human life, especially grossly exceeding the posted speed limit for a sharp curve in the road and disabling the seat belt for the front passenger seat. Those additional actions set the

13

circumstances here apart from involuntary manslaughter DUI and elevate the bad conduct to reckless second-degree murder.

We would be undercutting the Legislature's clear intent if we accepted DeGraeve's reading of the respective statutes criminalizing reckless second-degree murder and involuntary manslaughter DUI as triggering the sentencing accommodation in K.S.A. 21-5109(d). Consistent with its police power to define crimes, the Legislature has recognized some traffic deaths arising from drunk driving should be prosecuted as involuntary manslaughter—a less blameworthy form of wrongdoing than reckless second-degree murder—likely requiring no culpable mental state. See *State v. Rodriguez*, 305 Kan. 1139, 1154, 390 P.3d 903 (2017) (Legislature establishes what constitutes criminal act). Necessarily then, involuntary manslaughter resulting from a violation of K.S.A. 8-1567 is not simply a specific form or type of conduct also criminalized as reckless second-degree murder. DeGraeve's argument for an alternative sentence on his conviction comes up short.

*Sufficiency of Conviction for Reckless Second-Degree Murder*

DeGraeve contends the State failed to present sufficient evidence to support the jury's guilty verdict on the reckless second-degree murder charge. We have already touched on many of the premises that inform our resolution of this issue.

We review the trial evidence in a light favoring the State, as the prevailing party, and resolve every dispute in that evidence in its favor. *Aguirre*, 313 Kan. at 209; *Jenkins*, 308 Kan. 545, Syl. ¶ 1. We then ask whether, on that view of the record, a reasonable jury could render a guilty verdict. *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018).

As we have said, to prove a reckless second-degree murder, the State had to establish beyond a reasonable doubt that DeGraeve acted recklessly in a manner

14

exhibiting extreme indifference to the value of human life. K.S.A. 21-5403(a)(2). In turn, "recklessly" is a statutorily defined culpable mental state requiring that a defendant "consciously disregard[] a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 21-5202(j). So DeGraeve's conduct had to display a gross deviation or lack of care that also constituted a manifest indifference to human life.

Without belaboring the facts, especially viewed in favor of the State, we conclude the constellation of circumstances leading up to George's death satisfied the elements of reckless second-degree murder. DeGraeve drove far in excess of the posted speed limit on a marked curve in the highway and failed to navigate the curve in any way—he appeared to drive straight off the road and then rolled his pickup. DeGraeve was holding and likely using his cell phone at the time and had consumed enough alcohol that he displayed signs of intoxication after the mishap. Moreover, DeGraeve had disabled the seatbelt for the front passenger seat that George occupied. In short, DeGraeve's bad decisions and conduct pyramided in a way that made George's death a predictable consequence of choices that collectively displayed an extreme indifference to that tragic result. The jury returned a guilty verdict well within the trial evidence viewed favorably to the State and consistent with its role as the fact-finder in resolving conflicts in that evidence.

Affirmed in part, reversed in part, and vacated in part.